Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | GEORGE W. LINDBERG | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6023 | **DATE** | NOV 2 8 2001 |
| **CASE TITLE** | United States ex rel. Sidney Walton a/k/a Sidney Springs, #A-50817 vs. James G. Cox, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The clerk is directed to substitute the Warden of Robinson Correctional Center, Paul Barnett, Jr., for James G. Cox, Jr., as respondent, and dismiss the Illinois Attorney General as additional respondent. The petition for writ of habeas corpus is summarily dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases, terminating case. All motions denied as moot; ruling date set for November 28, 2001 is stricken.

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 2 9 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | 01 NOV 28 PM 3:42 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States ex rel.  )
)
SIDNEY WALTON, )
a/k/a/ SIDNEY SPRINGS (A-50817), )
) No. 2001 C 6023
Petitioner, )
)
v. ) Judge George W. Lindberg
)
PAUL BARNETT, JR., Warden,[1] )
)
Respondent. )

## MEMORANDUM OPINION AND ORDER

Sidney Walton, having on numerous occasions forced his way into buildings, demands to be released from a building he can't force his way out of. Walton filed this *pro se* petition for a writ of habeas corpus challenging two burglary convictions entered in the Circuit Court of Cook County, Illinois on January 13 and February 27, 1997. In an order dated August 9, 2001, the court directed Walton to show cause why the petition should not be dismissed as untimely under 28 U.S.C. § 2244(d), and if not it is not untimely, why his claims are not procedurally defaulted. Walton has responded. For the reasons explained below, the court finds Walton's habeas claims are untimely, defaulted, and meritless.

On January 13, 1997, Judge S.E. Palmer sentenced Walton to ten years' imprisonment for burglary following a bench trial. On February 27, 1997, following a guilty plea to a second burglary charge, Judge Palmer sentenced Walton to another, consecutive, ten-year term. Illinois' criminal code classifies burglary as a Class 2 felony, 720 ILCS 5/19-1, but if a defendant has previously been convicted of two Class 2 or greater felonies, separately tried and arising from separate acts, the defendant is to be sentenced as a Class X offender. 730 ILCS 5/5-5(c)(8).

---

[1] At the time the petition was filed, Walton was confined at Lincoln Correctional Center and named James G. Cox, Jr., as respondent. Walton has since been transferred to Robinson Correctional Center. The clerk is directed to substitute the Warden of Robinson Correctional Center, Paul Barnett, Jr., as respondent, and dismiss the Illinois Attorney General as additional respondent.



Walton qualified for the enhancement. At the time of Walton's conviction, the punishment for a Class 2 felony was three to seven years, but for a Class X felony was six to thirty years.

Walton did not appeal either conviction. He states in his response to the court's order that he filed a post-conviction petition in the Circuit Court of Cook County that was denied as frivolous and patently without merit, and he did not appeal. Walton does not give the dates of filing and disposition. On June 4, 2001 Walton filed a motion for leave to file a petition for writ of habeas corpus in the Illinois Supreme Court. The motion was denied on July 2, 2001.

Walton's petition in essence raised two claims: that his conviction is invalid because 730 ILCS 5/5-5(c)(8), which required that he be sentenced as if for Class X felonies, is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that the enactment of 730 ILCS 5/5-5(c)(8) violated the Illinois Constitution. Walton renews these claims in this court.

## A. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 enacted a one-year limitation period for filing a petition for habeas corpus. Under 28 U.S.C. § 2244(1)(A), the limitation period normally begins when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." As that clock started in 1997, this petition would be clearly untimely. However, Congress provided a limited exception in § 2244(1)(C) for newly-recognized constitutional claims, permitting the limitations period to begin on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

It is uncertain whether courts should infer from Congress's reference to "*the* constitutional right asserted," rather than "*a* constitutional right asserted," that the clock is restarted only for the new constitutional claim, but not for other claims that would otherwise be untimely. We will assume here that if the *Apprendi* claim is timely, the limitations period has not run with respect

2

to the petition as a whole. Since timeliness is a threshold issue, the court will address it, even though, as it turns out, Walton's claims are meritless.

In *Apprendi*, the Supreme Court reversed a criminal conviction under a New Jersey hate-crimes law that allowed a trial judge to impose greater penalties upon a defendant if the judge found by a preponderance of the evidence that the defendant committed the crime for the purpose of intimidating a member of a protected group on account of the victim's group identity. The Court held that the Sixth Amendment right to jury trial, as made applicable to the states through the Fourteenth Amendment, required that any fact (other than a prior conviction) that increases the statutory maximum penalty for a crime must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476.

The Supreme Court's opinion in *Apprendi*, released June 26, 2000, "newly" or "initially" recognized a constitutional right. *Ashley v. United States*, 266 F.3d 671, 672. But the limitations clock starts, or restarts, only when and if the newly recognized right has been "made retroactively applicable to cases on collateral review." The Supreme Court has not declared *Apprendi* to be retroactively applicable to cases on collateral review. Although several district court opinions, as well as the Seventh Circuit's opinion in *Montenegro v. United States*, 248 F.3d 585, 593-94 (7th Cir. 2001), had indicated that this was the end of the matter, *Ashley* overruled *Montenegro* on this point.

In *Ashley*, the Court of Appeals distinguished between paragraph 8 of 28 U.S.C. § 2255, which determines when a *second or successive* motion to vacate a federal sentence may be brought, and similar but not identical language in paragraph 6 of § 2255, governing the limitations period for filing an *initial* motion. The former permits a second or successive motion to be brought only after the *Supreme Court* holds a new constitutional right to be retroactively applicable on collateral review, but the latter starts the limitations clock when *any* federal court having territorial

3

jurisdiction so holds. *Ashley*, 266 F.3d 673-74.[2] Since the parallel provisions governing habeas petitioners for prisoners in state custody, 28 U.S.C. § 2244(b)(2)(A) and § 2244(d)(1)(C), respectively, share the same language, *Ashley* controls habeas corpus petitions brought under § 2254 as well. The Seventh Circuit acknowledged in *Ashley* that it had not addressed whether *Apprendi* is retroactively applicable on collateral review, so this court must make the initial determination in order to decide whether Walton's petition is timely.

To determine whether *Apprendi* may be applied retroactively, the court must apply the criteria set forth in *Teague v. Lane*, 489 U.S. 288 (1989). The court notes that every federal Court of Appeals that has considered the question has determined that *Apprendi* does not apply retroactively to collateral review. *See McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001); *United States v. Moss*, 252 F.3d 993 (8th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 146-51 (4th Cir. 2001); *Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000); *see also, In re Turner*, 267 F.3d 225 (3rd Cir. 2001)(construing 28 U.S.C. § 2244(b)(2)(A) but applying *Teague* factors).

The Supreme Court in *Teague* announced that Supreme Court opinions recognizing new rules of criminal procedure would not be applied retroactively on collateral review, with two very limited exceptions. *Teague*'s first exception is for new rules which forbid "criminal punishment of certain primary conduct" and new rules which prohibit "a certain category of punishment for a class of defendants because of their status or offense." *O'Dell v. Netherland*, 521 U.S. 151, 157, (1997). This exception is inapplicable, since the state's authority to punish Walton for burglary is beyond question.

*Teague*'s second exception is for new rules directed to the reliability of the determination of guilt, such that, absent the new rule, "the likelihood of an accurate conviction is seriously

---

[2] The Seventh Circuit noted the difference between paragraph 8 of 28 U.S.C. § 2255 (corresponding to 28 U.S.C. § 2244(b)(2)(A) for state prisoners), which permits a second or successive petition if "the applicant shows that the claim relies on a new rule of constitutional law, *made retroactive to cases on collateral review by the Supreme Court*, and paragraph 6 of 28 U.S.C. § 2255 (corresponding to § 2244(d)(1)(C) for state prisoners) which begins the limitation period "if the right has been newly recognized by the Supreme Court *and made retroactively applicable to cases on collateral review*" (emphases added). In the first case, the question is whether the *Supreme Court* has made a new rule applicable on collateral review, *see Tyler v. Cain*, ___ U.S. ___, 121 S.Ct. 2478, 150 L.Ed.2d 632 (June 28, 2001); in the second, it is whether *any court* has done so.

diminished." *Teague*, 489 U.S. at 313. A rule that merely effects an improvement in factfinding at trial is not sufficient, however. The Court indicated that "the procedure at issue must implicate the fundamental fairness of the trial," *id.* at 312; the exception is reserved for "watershed rules of criminal procedure" that "alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." *Id.* at 311. The Court subsequently pointed to *Gideon v. Wainwright*, 372 U.S. 335 (1963), as the type of rule that would satisfy *Teague*'s second exception. *See Saffle v. Parks*, 494 U.S. 484, 495 (1990). Further tightening an already tiny exception, the Supreme Court has described it as encompassing only a "small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty." *O'Dell*, 521 U.S. at 157, (1997)(quoting *Graham v. Collins*, 506 U.S. 461, 478 (1993)).

*Apprendi* announced two new rules: (1) a jury, rather than a judge, must determine facts (other than the fact of a previous conviction) supporting a statutory sentencing enhancement; and (2) the determination must be made beyond a reasonable doubt. Both of these relate to rights long considered fundamental in our criminal justice system. According to the *Apprendi* majority, "[a]t stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without "due process of law," and the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." *Apprendi*, 530 U.S. at 476-77 (quoting the Fourteenth and Sixth Amendments, respectively).

The holding of *Apprendi* cannot be minimized by characterizing it as merely affecting the sentencing determination, as opposed to adjudication of guilt. *Cf. Moss*, 252 F.3d at 999 ("it seems arguable whether *Apprendi* increases the reliability of the guilt-innocence determination at all because the rule does not protect the innocent from conviction, it instead limits the sentencing exposure of those who have been validly convicted"). This misunderstands the plurality opinion in *Apprendi*, which disclaims that distinction:

> New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwarranted pains should apply equally to the two acts that New Jersey has singled out for punishment. Merely

5

> using the label "sentence enhancement" to describe the latter surely does not provide a principled basis for treating them differently.

*Id.* at 476.

Nevertheless, although Justice O'Connor in dissent called the opinion "a watershed change in constitutional law," *id.* at 524, neither the majority opinion in *Apprendi* nor the concurring opinions of Justices Scalia and Thomas used language that would invoke the second *Teague* exception, and *Teague* itself was never mentioned. Conspicuously missing are references to "fundamental fairness," "implicit in the concept of ordered liberty," or "bedrock procedural elements." Courts of Appeals that have considered this question have noted that since *Teague* was decided more than a decade ago, the Court has found no new rules meeting the second exception. Given its often-repeated concern for the finality of criminal convictions, the Court is unlikely to find *Apprendi* applicable to collateral review.

As the Fourth Circuit pointed out in *Sanders*, a rule which merely shifts the fact-finding duties from judge to jury does not implicate the fundamental fairness of the trial; while the Constitution guarantees the right to trial by jury, bench trials are not fundamentally unfair. *Sanders*, 247 F.3d at 148-49. *Sanders* noted that *Neder v. United States*, 527 U.S. 1 (1999), had held that failing to submit to the jury the issue of materiality in a prosecution for making a false statement under 18 U.S.C. § 1001, which *United States v. Gaudin*, 515 U.S. 506 (1995), had held must be decided by a jury, was harmless error. *Sanders*, 247 F.3d at 148-49. This indicates that permitting the judge, rather than the jury, to find an element of a criminal offense does not affect the fundamental fairness of the trial, if fundamental fairness is perceived as a matter of the trustworthiness of the determination of guilt. As Justice Scalia explained in his dissent in *Neder*, the right to jury trial does not rest on a perception that juries on the whole make more accurate determinations of guilt than judges do, but a political decision not to entrust the determination of guilt to judges. *Neder*, 527 U.S. at 30-32 (Scalia, J. dissenting); *see also Apprendi*, 530 U.S at 498-99 (Scalia, J. concurring). This rule consequently does not fall within the scope of the second *Teague* exception.

More troubling is the requirement that the predicate facts leading to an enhanced sentence be found beyond a reasonable doubt, rather than a preponderance, an issue central to *Winship*:

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence--that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' . . . As the dissenters in the New York Court of Appeals observed, and we agree, 'a person accused of a crime * * * would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.'

*Winship*, 397 U.S. at 262 (citations omitted). The Fourth Circuit in *Sanders* grudgingly acknowledged that requiring the reasonable doubt standard "will promote marginally more accurate results," but pointed out that *Apprendi* addresses only one element, not the entire case. *Sanders*, 247 F.3d at 149-50.[3/] Accuracy as to each element, of course, is essential to the accuracy of the conviction. *Winship* held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *Winship*, 397 U.S. at 364, and the reasoning of *Apprendi* makes clear that when a fact substantially increases the penalty to which a defendant is exposed that fact is an element of the crime, not a mere sentencing factor.

Nevertheless, other arguments articulated in *Sanders* persuade this court that this second rule announced by *Apprendi* does not fit the second *Teague* exception. First, it does not appear to reflect the kind of change in our understanding of the fundamental requirements of criminal procedure contemplated by *Teague*'s second exception. "[W]e do not read *Apprendi* to hold that the country's criminal justice system malfunctioned so fundamentally prior to the year 2000, as to merit the retroactive application of the Court's new procedural rule." *Sanders*, 247 F.3d at 150.

Second, the Fourth Circuit noted that after *Apprendi* it continues to be constitutionally permissible for the legislature to grant judges wide discretion in sentencing, permitting the sentence

---

[3/] Perhaps it should be made explicit the difference between the language of *Teague*, "the likelihood of an accurate conviction," i.e., that those convicted really are guilty, and the phrase "more accurate results." Any procedure that heightens the prosecution's burden will increase the rate of accurate convictions, but by increasing the number of acquittals of guilty persons it will not improve the rate of accuracy in the overall results.

7

to depend upon the judge's appraisal of the defendant's past conduct, conduct that need not be proven beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 481-82. As the Eighth Circuit pointed out in *Moss*,

> What strikes us as particularly indicative that *Apprendi* is not on a par with *Gideon* is that the new rule announced floats and flows with the tide of legislative pronouncements. . . . Congress could tomorrow eliminate [21 U.S.C.] § 841's quantity-dependent sentencing scheme by imposing a maximum penalty of life imprisonment for any violation of the statute, thereby permitting the Sentencing Guidelines' drug quantity assessments made by a judge using a preponderance standard to inform the judge's actual sentencing decision. That would be constitutionally permissible as the law stands after *Apprendi*, regardless of whether any quantity was alleged in the indictment. . . . Yet a defendant convicted and sentenced under today's version of § 841 would be entitled to attack retroactively his conviction, while one convicted and sentenced under tomorrow's version of § 841, even though both defendants were subjected to identical criminal proceedings and received identical sentences, would have no constitutional basis to challenge his sentence. . . . The fact that a legislative body's determination of the statutory maximum associated with a particular crime determines whether a sentence may be based upon a judge-found fact is incompatible with a right that is absolutely necessary to a fair trial.

*Moss*, 252 F.3d at 1000. If the legislature attempts to control judicial discretion by setting an initial sentencing range, permitting a greater sentence only if the judge expressly finds certain additional facts, this structure, though impermissible after *Apprendi*, is arguably more "fair" to the defendant than the permissible structure of according the judge complete discretion.

We conclude that, under *Teague*, neither of the new rules announced in *Apprendi* is retroactively applicable on collateral review. Accordingly, the requirement of 28 U.S.C. § 2244(d)(1)(C) has not been met and the petition is untimely.

## B. PROCEDURAL DEFAULT

Even if the petition were timely, Walton's claims have been procedurally defaulted. Before resorting to federal court, a habeas petitioner must first give state courts a fair opportunity to address his claims. 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). This includes raising the claims in the manner prescribed by state procedural rules. *Pisciotti v. Washington*, 143 F.3d 296, 300 (7th Cir. 1998).

8

Walton appears to be correct that state law permits a constitutional challenge to a criminal statute to be made at any time. *People v. Wright*, 194 Ill.2d 1, 23-24, 740 N.E.2d 755, 766 (2000). But it is questionable whether habeas corpus was the proper approach. Under Illinois law, a writ of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court which lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some post-conviction occurrence that entitles him to release. *Barney v. Prisoner Review Board*, 184 Ill.2d 428, 704 N.E.2d 350 (1998). It does not appear that Walton's claims were of this nature, as it appears that the court had jurisdiction to try and convict him, even if, as he contends, the court did not have authority to impose the sentence it did. *See People v. Davis*, 156 Ill.2d 149, 155-57, 619 N.E.2d 750, 754-55 (1993). It appears that the appropriate way of raising Walton's claims would have been by petition under the Illinois Post-Conviction Hearing Act, *see, e.g.*, *People v. Smith*, 314 Ill.App.3d 1111, 734 N.E.2d 104 (4th Dist. 2000), rather than habeas corpus.

In any event, Walton's starting at the top -- attempting to file an original petition in the Illinois Supreme Court-- was not a fair presentation of his claims to the state courts. Although the Illinois Supreme Court can issue writs of habeas corpus, its consideration of habeas petitions is discretionary, *see* Ill. Sup. Ct. Rule 381, and it declined to consider Walton's claims. Presenting federal claims for the first time in a discretionary petition addressed to the state's highest court will not satisfy the fair presentment requirement for federal habeas purposes, and results in a procedural default. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Wilson*, 243 F.3d at 328. While a procedural default may be excused if a petitioner demonstrates cause and prejudice or that a fundamental miscarriage of justice will result if the claim is not considered, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wilson*, 243 F.3d at 329, nothing in the petition suggests that Walton can show either.

## MERITS

Finally, Walton's claims are meritless. Walton does not have an *Apprendi* claim. The majority opinion in *Apprendi*, following *Jones v. United States,* 526 U.S. 227 (1999), expressly *excluded* the fact of prior conviction or convictions from the rule that facts that increase the prescribed range of penalties must be found by the jury. *Apprendi*, 530 U.S. at 476, 489-90. Walton's prior convictions required that his burglary convictions carry Class X felony sentences, and this *Apprendi* permits.

Walton's second claim for relief is that 730 ILCS 5/5-5(c)(8), directing that Walton's burglary convictions be treated as Class X offenses, enacted by P.A. 80-1099, was invalidly enacted in violation of the single subject rule of the Illinois Constitution, requiring that "bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). (Walton also names P.A. 88-680, P.A. 89-203, P.A. 89-404, P.A.89-428, and P.A. 89-462, but these do not appear to have affected the provision under which he was sentenced.)

Federal habeas proceedings are concerned solely with whether the petitioner's confinement violates the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal court will consider violations of state law or procedure only if they result in a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997), *cert. denied*, 523 U.S. 1032 (1998); *United States ex rel. Hoover v. Franzen*, 669 F.2d 433 (1982)(district court could not order return of prisoners transferred to federal custody when the transfer violated Illinois Constitution but not federal law). Whether the enactment of this statute violated the Illinois Constitution is irrelevant to whether Walton received the due process of law guaranteed by the Constitution of the United States, and is not cognizable in federal habeas. *United States ex rel. King v. Cahill-Masching*, No. 00 C 5981, 2001 WL 474060 (N.D. Ill. 2001)(Castillo, J.)(claim that enactment of criminal statute violated Illinois Constitution not cognizable).

The court also notes that the Illinois Appellate Court has rejected a claim that the enactment of P.A. 80-1099 violated the single-subject rule, *Smith, supra*, 314 Ill.App.3d at 1112-13, 734 N.E.2d at 105, as has Judge Reinhard of this court. *Hanrahan v. Williams*, No. 97 C 50217, 1998 WL 175889 (N.D. Ill. 1998), *aff'd in part, rev'd in part*, 175 F.3d 1070 (table), 1999 WL 253507 (7th Cir. 1999).

As it is clear from the petition and exhibits that Walton is not entitled to relief, no response will be ordered and the petition is summarily dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993).

IT IS SO ORDERED.

George W. Lindberg, Judge
United States District Court

DATED: NOV 2 8 2001

11